**Judith T. RESSLER, et al., Plaintiffs,**

v.

**AETNA U.S. HEALTHCARE, INC., et al., Defendants.**

**Civ.A. No. 98–3912.**

United States District Court, E.D. Pennsylvania.

Nov. 28, 2001.

Jana R. Barnett, Wyomissing, PA, for plaintiffs.

Adam B. Krafczek, Jr., Elliott, Reihner, Siedzikowsky and Egan, P.C., Blue Bell, PA, Patricia C. Lemanowicz, Patricia C. Collins, Elliott, Reihner, Siedzikowski & Egan, P.C., for defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiff Judith Ressler was an employee of defendants Aetna U.S. Healthcare, Inc. and Aetna, Inc. (the "defendants").[1] Plaintiff's employment was terminated by defendants as a result of the closing down of one of defendants' facilities. At the time of her termination, plaintiff Ressler was covered under an ERISA-qualified plan established by defendants (the "Plan"). Under the Plan, defendants agreed to pay eligible employees certain salary and continuation benefits upon termination, subject to certain conditions.

The Plan was administered by a Plan Administrator. Under the Plan, an Appeals Committee (the "Appeals Committee") was established to act on behalf of the Plan Administrator in determining eligibility for salary and continuation benefits. One of the conditions of eligibility for salary and continuation benefits is that the employee who was terminated and who now seeks payment of the benefits must not have declined an offer of comparable employment made by defendants. The Plan vests defendants with the discretion to determine whether an offer is one of "comparable employment," as that term is defined by the Plan.

In this case, the Appeals Committee, ruling on behalf of the Plan Administrator, denied plaintiff Ressler's request for benefits based on a finding that plaintiff Ressler had declined an offer of comparable employment made by the defendants. The issue before the court is whether the Appeals Committee's decision denying plaintiff Ressler's salary and continuation benefits on the basis that she had decline an offer of comparable employment was arbitrary and capricious.[2]

After the completion of discovery, the court held a one-day bench trial. Thereafter, the parties made written submissions. Upon review of the trial record and of the parties' written submissions and for the reasons that follow, the court finds that the decision of the Appeals Committee to deny plaintiff Ressler salary and continuation benefits based on a finding that she had declined an offer of comparable em-

---

1. Defendant Aetna U.S. Healthcare Inc. is a wholly-owned subsidiary of defendant Aetna Inc., and, therefore, the court will refer to them as a single defendant.

2. There are five other plaintiffs in this case. The claims of Debra Blanco, Joanne Brenner, Kim Brinker, Doreen Moll, and Jo Schweitzer were all severed pending trial of the claim of the instant plaintiff, Judith T. Ressler. Plaintiff Ressler also alleges that defendant discriminated against her because of her age by awarding three positions to younger employees from approximately December 1996 to the termination of her employment. This claim was also severed pending trial of plaintiff Ressler's ERISA claim.

ployment was not supported by substantial evidence on the record and was, therefore, arbitrary and capricious.

In light of the court's finding, the Plan Administrator is directed to calculate the amount of salary and continuation benefits owed to plaintiff Ressler under the Plan, and to make any payments owed and due within 30 days.

## I. FACTS [3]

Defendants Aetna U.S. Healthcare, Inc. and Aetna, Inc. provide certain benefits to terminated employees under an ERISA-qualified severance benefit plan (the "Plan"). Under the Plan, defendants agree to pay eligible employees certain salary and continuation benefits upon termination of employment, subject to certain conditions.

> The Plan, provides, in pertinent part:
> The Employer shall pay Severance Benefits to Severed Employees, 13 Week Salary Continuation Benefits to Employees who suffer a Job Elimination, and 17 Week Salary Continuation Benefits to 17 Week Eligible Employees who suffer a Job Elimination, each in accordance with this Article II; provided, however, that . . . (b) no 13 Week Salary Continuation Benefits, 17 Week Salary Continuation Benefits or Severance Benefits shall be provided to any Employee who refuses an offer of Comparable Employment. . . .

Aetna Severance and Salary Continuation Benefits Plan, Section 2.1(b), Def.'s Ex. F.

The Plan defines "Comparable Employment" as:

> a position of employment with an Employer or Affiliate determined by the Company, in its sole discretion, to have equal or greater compensation and responsibility than the Employee's immediately preceding position with an Employer. A position will not be considered Comparable Employment if it would require a relocation of the Employee's residence or a significant change in work schedule or work days. The Company, in its sole judgment, shall determine whether or not residence relocation or a significant change in work schedule or workdays is required.

*Id.* at Section 1.8.

The Plan sets forth the procedures a claimant must follow in filing a claim for benefits under the Plan.[4] *Id.* at Section 3.3. The responsibility for administering the Plan is assigned to a Plan Administrator. *Id.* The Appeals Committee acts on behalf of the Plan Administrator in determining an individual's eligibility for salary and continuation benefits. The Plan Administrator acting through the Appeals Committee has the authority to "construe and interpret the Plan, decide all questions of eligibility, determine the status and rights of Employees, and determine the amount, manner and time of payment of any benefits [under the Plan]." *Id.* at Section 3.2(a).

---

**3.** Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, this memorandum constitutes the court's findings of fact and conclusions of law. Prior to the hearing, the parties submitted a signed stipulation of facts that comprises most of the court's findings of fact.

**4.** According to the definition section of the Plan, "Company" is defined as "Aetna Life and Casualty Company or any successor by

merger, consolidation, purchase or otherwise." Aetna Severance and Salary Continuation Benefits Plan, Section 1.7, Def.'s Ex. F. However, the terms, "Administrator" and "Plan Administrator," also mean "the Company. . . ." *Id.* at Section 1.2. Thus, it appears that when the Plan refers to "the Company," it includes the Plan Administrator in that reference.

At all relevant times, defendants employed plaintiff Ressler at its Reading, Pennsylvania ("Reading") facility in the "Operations" division. In September 1996, defendants announced that it was closing its Reading facility, including its Operations division. In connection with closing the Reading facility, defendants created a bonus plan to accommodate both employees who wished to transfer to either its Blue Bell, Pennsylvania ("Blue Bell") or Allentown, Pennsylvania ("Allentown") facilities and those who wished to remain employed at the Reading facility as business needs dictated during the time up to the closing of that facility.

The bonus plan was intended to help defray the employees' additional expenses associated with a transfer. Under this arrangement, defendants agreed to pay, over a two (2) year period, a "transfer bonus" equal to fifty percent (50%) of the salary of any employee who transferred to either the Blue Bell or Allentown facility. Additionally, because defendants needed a sufficient number of employees to maintain the Reading facility until all outstanding work could be transferred to either the Allentown or Blue Bell facility, any employee who chose to stay at the Reading facility as business needs dictated, received a "retention bonus" equal to twenty percent (20%) of their salary.

In order to group employees according to whether they wished to transfer to the Blue Bell or Allentown facility or continue to work at the Reading facility, defendants circulated a Revised Preference Form to its employees in the Operations division. The Revised Preference Form asked the employees to decide between transferring to a "position in Allentown or Blue Bell" with an accompanying transfer bonus or "decline a position, but stay on in Reading as business needs dictate" with an accompanying retention bonus.[5] Revised Preference Form, Def.'s Ex. E.

Along with the applicable Revised Preference Form, defendants distributed a cover memorandum to the Reading employees in the Operations division, including plaintiff Ressler, which provided, in pertinent part:

> The business being transferred to our Allentown and Blue Bell offices needs each of you to continue providing quality service and support. As a result, we are transferring you to a comparable position in Allentown or Blue Bell. We want to encourage you to take a position in one of these offices, so we have established a program that will provide you with financial assistance.

> While we hope that many of you will choose positions in Allentown or Blue Bell, we understand from our discussions with you that there may be some of individuals who will not want to transfer to a comparable position in either location. For those individuals, we are pleased to announce a new component to your incentive program: a retention bonus. This one-time retention bonus will provide 20% of your base salary for staying in the Reading office as business needs dictate.

Cover Memorandum to Revised Preference Form, Def.'s Ex. A.

On February 24, 1997, after plaintiff Ressler responded to the "Revised Prefer-

---

**5.** The defendant also circulated a "Revised Preference Form" to the employees in the "Patient Management" division which asked the employees to decide between transferring to the Blue Bell facility with an accompany- ing transfer bonus or remaining at the Reading facility with an accompanying retention bonus. Employees in the "Patient Management" division were not given the option of transferring to the Allentown facility.

ence Form," [6] she executed the "Retention Agreement," exercising the option to remain at the Reading facility until it closed, at which time she would be terminated.[7] Def.'s Ex. C. Plaintiff Ressler's "Retention Agreement" provided, in pertinent part:

The purpose of this memo is to set out the agreement we have reached with respect to the continuing performance of your services ... at the Reading, PA site during the transition of the Reading office.... We further understand from your indication on your site preference form, that do not wish to transfer to either the Allentown, PA or Blue Bell, PA site. In view of the Company's need to retain your services in completing the transition of business, we agree to do the following: (1) Subject to the terms of this agreement, we will make payment of a retention bonus (the "bonus") equal to 20% of your base salary as of December 1, 1996 to you within two weeks after your release date.

*Id.* Plaintiff Ressler attached an addendum to the Retention Agreement that stated, in pertinent part, "Aetna acknowledges that the fact that you do not wish to transfer to either the Allentown or Blue Bell sites

does not bar you from eligibility for severance benefits." [8] *Id.* The defendants did not respond to the addendum.

On April 30, 1997, plaintiff Ressler learned that, because most of the work at the Reading facility was complete, she would be terminated on June 6, 1997. By letter dated May 5, 1997, plaintiff Ressler requested severance and salary continuation benefits under the Plan. Def.'s Ex. J. In her letter, plaintiff Ressler asserted that because she did not refuse an offer of comparable employment, she was entitled to severance and salary continuation benefits. *Id.* at 4–6.

On August 12, 1997, the Appeals Committee denied plaintiff Ressler's request for salary and continuation benefits finding that plaintiff Ressler had:

declined an offer of comparable employment as cited in the Retention Agreement [she] signed on February 27, 1997. In addition, the Company determined that no relocation of your residence was required nor a significant change in your work schedule or days. Therefore, you are not eligible for severance and salary continuation plan benefits.

---

**6.** Plaintiff Ressler responded not by selecting either available option, but instead attaching a document entitled "Response to Preference Form," which proposed three (3) alternatives to defendants' options, contrary to the instruction in the Revised Preference Form stating, "[i]ndicate your *one* preference...." Def.'s Ex. E. Nevertheless, in her Revised Preference Form, plaintiff Ressler listed the following options:

"(1) Telecommute-work at home, with one day a week at either Allentown or Blue Bell—$2500 incentive;

(2) If work-at-home not immediately available for me, I would consider the daily commute to either Allentown or Blue Bell for a limited time, such as six months, until telecommute available for me. I would request written confirmation of this intent. I would then expect a compromise incentive

of $2500 incentive for work-at-home, plus the 30% of the incentive offered to commuters;

(3) Stay on in Reading until October 1, 1997 to close this office. Although the offered incentive is 20% of annual salary, I would consider this job elimination & therefore severance and continuance pay for 13 weeks is what 'will make it work for me.' "

*Id.*

**7.** Between February 24, 1997 and May 14, 1997, plaintiff Ressler's co-plaintiffs also executed a similar "Retention Agreement."

**8.** Plaintiffs Blanco, Brinker, and Schweitzer all attached and signed a similar addendum to their respective Retention Agreements. Def.'s Ex. C.

Def.'s Ex. K. In reaching this conclusion, the Appeals Committee examined plaintiff Ressler's letter to the Plan Administrator dated May 5, 1997 and attached materials, her Revised Preference Form, the cover memorandum sent along with the Revised Preference Form, her Retention Agreement, and information gathered by Cathleen Connors Johnson ("Ms. Connors")[9], who investigated plaintiff Ressler's request on behalf of the Appeals Committee. Trial Tr., 10/19/00 at 134–35. After denial of benefits, plaintiff Ressler began an action in this Court.

## II. LEGAL STANDARD

■ When an ERISA-covered plan provides the plan administrator with discretionary authority to determine eligibility under the plan, this court must review the administrator's decision under the arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). According to the arbitrary and capricious standard, this court "is not free to substitute its own judgment for that of the [administrator] in determining eligibility for plan benefits." *Mitchell v. Eastman Kodak Company,* 113 F.3d 433, 439 (3d Cir.1997) (quotation omitted). Rather, under this highly deferential standard of review, a court must defer to the administrator of an employee benefit plan unless the administrator's decision clearly is not supported by the evidence in the record or the administrator has failed to comply with the procedures required by Plan. *Abnathya v. Hoffmann–La Roche, Inc.,* 2 F.3d 40, 41 (3d Cir.1993). Given that the parties agree that the Plan provides the Plan Administrator with discretionary authority to determine an applicant's eligibility for benefits, the arbitrary and capricious standard applies to the decision of the Appeals Committee denying plaintiff Ressler's request for benefits under the Plan.[10]

The Appeals Committee's sole basis for denying plaintiff Ressler's claim for benefits is that plaintiff Ressler declined an offer of comparable employment made by defendants. Therefore, the discrete issue before the court is whether the Plan Administrator's determination, made through the Appeals Committee, denying the claim for benefits on the basis that the plaintiff Ressler had declined defendants' offer of comparable employment, was arbitrary and capricious, i.e., not supported by substantial evidence.[11] *See Firestone Tire &*

9. As Cathleen Connors Johnson is referred to as "Ms. Connors" in her deposition and in the course of the litigation, the court will continue this practice for the sake of clarity.

10. Plaintiff Ressler contends that the court should apply a heightened "abuse of discretion" standard outlined in *Pinto v. Reliance Standard Life Ins. Co.,* 214 F.3d 377 (3d Cir. 2000) and *O'Sullivan v. Metropolitan Life Ins. Co.,* 114 F.Supp.2d 303 (D.N.J.2000). Plaintiff argues such a heightened standard is justified as the defendants had several incentives to deny severance and salary continuation benefits. Specifically, plaintiff Ressler argues that such denials would save money from defendants' general assets, encourage defendants' employees to continue working for defendant even after they were entitled to receive benefits. Because the court concludes that defendants' denial of plaintiff's claims for benefits under the Plan cannot be sustained even under the ordinary arbitrary and capricious standard, it is unnecessary to determine whether a heightened arbitrary and capricious standard should be applied to this case.

11. The parties both direct the court's attention to evidence indicating whether or not comparable positions were available at defendant's Allentown or Blue Bell facility The Plan is clear, however, that the pertinent inquiry concerning defendant's denial of plaintiffs' claims for benefits is only whether plaintiffs were offered positions of comparable employment. Aetna Severance and Salary Continuation Benefits Plan, Section 2.1(b), Def.'s Ex. F.

*Rubber Co.*, 489 U.S. at 115, 109 S.Ct. 948; *see also Mitchell*, 113 F.3d at 439; *Abnathya*, 2 F.3d at 41.

## III. OFFER OF "COMPARABLE EMPLOYMENT" WAS NOT SUFFICIENT UNDER THE PLAN

■ Under the Plan, defendants are vested with discretion to determine whether to offer a new position to the terminated employee, and if so, whether the new position constitutes "comparable employment." The Plan defines "comparable employment" as a position which requires "equal or greater compensation and responsibility than the [terminated employee's] immediately preceding position." Aetna Severance and Salary Continuation Benefits Plan, Section 1.8, Def.'s Ex. F. Additionally, a position will not be considered comparable if it would "require a relocation of the [terminated employee's] residence or a significant change in work schedule or word days." *Id.*

Thus, under the Plan, the Appeals Committee is not free to revisit the defendants' exercise of discretion de novo or to second guess the defendants' business judgment. Rather, the Appeals Committee's role is limited to confirming that discretion indeed has been exercised by the defendants and that the defendants' judgment has been informed by the specific factors provided for in the Plan.

That the Plan vests "sole discretion" on the defendants to determine whether to offer a new position, and if so, whether the new position is comparable to the preceding position, does not mean that the discretion is unfettered or that the defendants are licensed to act on whim or caprice or in the absence of a rational basis for their decision. Rather, the grant of discretion to the defendants under the Plan invites a process of comparing the former position with the new position informed by the specific factors identified in the Plan. It is the role of the Appeals Committee to determine whether the defendants exercised informed discretion in determining whether the new position is comparable to the former position.

In this case, at the time that it made its determination, the Appeals Committee had before it the following information.[12] (1) The cover memorandum attached to plaintiff Ressler's Revised Preference Form indicating a blanket and conclusory offer to transfer employees "to a comparable position in Allentown or Blue Bell"; (2) The Revised Preference Form's choice between "A position in Allentown or Blue Bell [or] [d]ecline a position, but stay on in Reading as business needs dictate"; (3) Plaintiff Ressler's Retention Agreement which provides, "We further understand from your indication on your site preference form, that you do not wish to transfer to either the Allentown ... or Blue Bell ... site"; (4) Plaintiff Ressler's letter to the Appeals Committee stating "[she] ha[d] not refused an offer of comparable employment."

None of the documents considered by the Appeals Committee refer to any specific position being offered to plaintiff Ressler nor do the documents inform the con-

**12.** Based on the testimony submitted at the trial, the evidence submitted to the Appeals Committee is limited to the documentary evidence discussed above. Ms. Connors, who investigated plaintiff Ressler's claim and presented the information to the Appeals Committee, testified that the information she gathered was based on the documentary evidence presented above as well as information provided by Ruth Cranage, an Human Resources consultant for defendants, who also investigated plaintiff's claim. *See* Connors Deposition, 38–41, Def.'s Ex. T. However, Ms. Cranage admitted at trial that she relied exclusively on the same documentary evidence to determine that the plaintiff had refused an offer of comparable employment. Trial Tr. 10/19/01 at 121.

clusion that the defendants considered any of the factors enumerated in the Plan for determining "comparable employment," such as the compensation and benefits, the duties and responsibilities, specific geographic location, schedule or days of work. Further, there is no indication in the documents that the defendants compared how the terms and conditions of employment which plaintiff Ressler enjoyed in her immediately preceding position would be affected in her new position.[13] The only document among those considered by the Appeals Committee that so much as refers to the status, benefits and geographic location of the old position versus the new position is the cover memorandum which stated that plaintiff Ressler was eligible for a position of "comparable employment," but it did not include any details concerning the new position with respect to the specific factors provided for in the Plan.

The Appeals Committee placed a great deal of reliance on the Retention Agreement. Specifically, Ms. Connors, in her deposition testimony introduced at trial, stated that it was "the fact that [one of the individual plaintiffs] was given a retention agreement" that led her to the conclusion that that individual had been offered comparable employment.[14] Additionally, Ms. Connors later wrote to plaintiff Ressler denying her request for benefits and in-

structed, "You declined an offer of comparable employment as cited in the Retention Agreement...." Def.'s Ex. J.

The Appeals Committee's reliance on the Retention Agreement as proof of an offer of comparable employment is misplaced. While it is true that the Retention Agreement contains an acknowledgment that plaintiff Ressler was not interested in transferring to either of defendants' Allentown or Blue Bell facility, the Retention Agreement does not detail the type of position plaintiff Ressler was offered. Given the lack of specificity the Appeals Committee could not have concluded that defendants had indeed exercised discretion based upon the factors identified in the Plan.

The Court recognizes that the Plan does not require that the offer of comparable employment identify the exact title and precise physical location of the new position. The Plan does not mandate that the terminated employee be given a detailed job description of the new position. However, implicit in the Plan's scheme, is a requirement that the offer of employment provide sufficient detail concerning the terms and conditions of the new position from which the Appeals Committee can compare the new position to the former one. Only if such detail is provided can the Appeals Committee determine that the de-

---

**13.** The sole basis for the Appeals Committee' decision was that, based on defendants' incentives provided in the cover memorandum to the Revised Preference Sheet, the Revised Preference Sheet itself, and the Retention Agreement, that plaintiff Ressler was, indeed, offered "comparable employment." Conclusory statements of an offer of "comparable employment", in the above evidence of record, are insufficient to satisfy the Plan's mandate that the defendants exercise discretion informed by the factors outlined in the Plan.

**14.** At the trial, defendants were given an opportunity to provide deposition testimony

showing what information Ms. Connors provided the Appeals Committee with respect to the issue of whether or not plaintiff Ressler had been offered a position of comparable employment. Defense counsel provided the deposition testimony of Ms. Connors, including the testimony quoted above. Although this testimony was in response to a question regarding what information Ms. Connors considered with respect to plaintiff Blanco, apparently defense counsel believes this response should be considered for all plaintiffs, including plaintiff Ressler.

fendants exercised discretion in making an offer of comparable employment and that the discretion exercised was informed by the factors specifically provided for in the Plan. Given the absence of substantial evidence on the record in this case from which the Appeals Committee could make this determination, the decision of the Appeals Committee was "without reason" and "unsupported by substantial evidence." *Pinto,* 214 F.3d at 393 (quoting *Abnathya,* 2 F.3d at 45). Thus, the Appeals Committee's denial of plaintiff Ressler's request for salary and continuation benefits was arbitrary and capricious. *See Firestone Tire & Rubber Co.,* 489 U.S. at 115, 109 S.Ct. 948. *See also Mitchell,* 113 F.3d at 439; *Abnathya,* 2 F.3d at 41.

## IV. CONCLUSION

The action of the Appeals Committee denying plaintiff Ressler's request for benefits on the basis that the defendants had made an offer of comparable employment and that plaintiff Ressler declined said offer constituted an abuse of discretion in that there was a lack of substantial evidence on the record to support such a finding. The Appeals Committee's decision was, therefore, arbitrary and capricious.[15] The Plan Administrator is ordered to calculate the benefits for plaintiff Ressler as well as a payment schedule for those benefits and notify plaintiff Ressler concerning that information within fourteen (14) days of this order, in accordance with the court's order entered on this date.

An appropriate order follows.

## ORDER

**AND NOW,** this **28th** day of **November, 2001,** it is hereby **ORDERED** that:

**15.** Remand to the Appeals Committee is not required because no factual or evidentiary determinations remain in this case. *See Can-*

1) By **December 14, 2001,** the plan administrator shall calculate the amount of salary and continuation benefits for plaintiff Ressler as well as the payment schedule for those benefits and notify her of this information. By **January 3, 2001,** plaintiff Ressler may file objections with this court regarding the amount of benefits calculated by the plan administrator and/or the payment schedule for those benefits;

2) A hearing on plaintiff Ressler's objections, if any, and to determine whether judgment shall be entered pursuant to Federal Rule of Civil Procedure 58 is **SCHEDULED** for **January 15, 2002** at **10:00 a.m.** in Courtroom 12A, United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania.

**AND IT IS SO ORDERED.**

*seco v. Constr. Laborers Pension Trust,* 93 F.3d 600, 609 (9th Cir.1996).